IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Christopher L. Thomas, | ) | C/A No. 0:13-1737-TMC-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Lt. McMillian; Lt. Glover-Blanding, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff Christopher L. Thomas ("Thomas"), a self-represented state prisoner, filed this action pursuant to 42 U.S.C. § 1983 alleging violation of his constitutional rights by Defendant McMillian and Defendant Glover-Blanding[1] while he was detained at the Sumter-Lee Regional Detention Center ("SLRDC"). This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendants' motion for summary judgment. (ECF No. 36.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Thomas was advised of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the defendants' motion. (ECF No. 37.) Thomas filed a response in opposition to the defendants' motion (ECF No. 40) and the defendants filed a reply (ECF No. 41). Having carefully considered the parties' submissions and the applicable law, the court concludes that the defendants' motion should be granted.

---

[1] The court observes that the correct spelling of this defendant's name is "Lt. Blanding" (See ECF No. 36-1 at 1.) Therefore, this defendant will be hereinafter referenced as Defendant Blanding.



## BACKGROUND

The Complaint alleges that the defendants authorized Thomas's placement in disciplinary unit "Max-Bravo" after he and an officer "had words." (ECF No. 1 at 3.) The Complaint further asserts that Thomas did not receive a "24 hour notice" for a hearing after his "lock-up," did not receive "any proof" of why he was placed in the disciplinary unit, and did not receive a disciplinary hearing. (Id.) The Complaint also claims that the defendants did not follow their own policies and procedures. (Id. at 5.) Thomas seeks monetary damages. (Id.)

## DISCUSSION

### A.     Summary Judgment Standard

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the



entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."

Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.    Exhaustion of Administrative Remedies**

As an initial matter, the defendants argue that summary judgment should be granted in their favor due to Thomas's failure to exhaust his administrative remedies. (ECF No. 36-1 at 15-17.) A prisoner must exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), specifically 42 U.S.C. § 1997e(a).[2] Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This requirement "applies to all inmate suits about prison

---

[2] Pretrial detainees are specifically included in this requirement pursuant to § 1997e(h), which defines a "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law."



life, whether they involve general circumstances or particular episodes, and whether they allege

excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Moreover,

exhaustion is required even when a prisoner seeks remedies, such as money damages, that are not

available in the administrative proceedings. See Booth v. Churner, 532 U.S. 731, 740-41 (2001).

To satisfy this requirement, a plaintiff must avail himself of every level of available administrative

review. See generally id. Those remedies neither need to meet federal standards, nor are they

required to be plain, speedy, and effective. Porter, 534 U.S. at 524 (quoting Booth, 532 U.S. at 739).

Satisfaction of the exhaustion requirement requires "using all steps that the agency holds out, and

doing so *properly*." Woodford v. Ngo, 548 U.S. 81, 90 (2006) (quoting Pozo v. McCaughtry, 286

F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). Thus, "it is the prison's requirements, and

not the [Prison Litigation Reform Act], that define the boundaries of proper exhaustion." Jones v.

Bock, 549 U.S. 199, 218 (2007). The defendants have the burden of establishing that a plaintiff

failed to exhaust his administrative remedies. Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d

674, 683 (4th Cir. 2005).

Here, the defendants indicate that the SLRDC has a grievance procedure and provide copies

of grievances filed by Thomas. (ECF No. 36-1 at 16; see also ECF Nos. 36-3, 36-4, 36-7.)

However, the defendants have not presented sufficient evidence to establish what steps are required

for proper exhaustion of a detainee's administrative remedies under the SLRDC's grievance

procedure. Accordingly, the defendants have failed to carry their burden to show that Thomas failed

to properly exhaust his administrative remedies in accordance with § 1997e(a).

OJG

**C.       Pre-trial Detainee Status**

The Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment's

proscription against cruel and unusual punishment, governs cases in which pre-trial detainees allege

constitutional violations.  Cooper v. Dyke, 814 F.2d 941, 948 (4th Cir. 1987).  The Supreme Court

explained this distinction as follows:

> Eighth Amendment scrutiny is appropriate only after the State has complied with the
> constitutional guarantees traditionally associated with criminal prosecutions. . . .
> [T]he State does not acquire the power to punish with which the Eighth Amendment
> is concerned until after it has secured a formal adjudication of guilt in accordance
> with the due process of law.  Where the State seeks to impose punishment without
> such an adjudication, the pertinent constitutional guarantee is the Due Process Clause
> of the Fourteenth Amendment.

Ingraham v. Wright, 430 U.S. 651, 671-72 n.40 (1977) (citations omitted).  The due process rights

of a pretrial detainee are "at least as great as the Eighth Amendment protections available to a

convicted prisoner."  City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244 (1983).

**D.       Defendants' Motion for Summary Judgment**

**1.        Due Process Claims**

**i.        Disciplinary Hearing**

"[A] detainee may not be punished prior to the adjudication of guilt in accordance with due

process of law."  Bell v. Wolfish, 441 U.S. 520, 535-36 (1979); see also Higgs v. Carver, 286 F.3d

437, 438 (7th Cir. 2002) ("A pretrial detainee cannot be placed in segregation as a punishment for

a disciplinary infraction without notice and an opportunity to be heard; due process requires no

less.");  Mitchell v. Dupnik, 75 F.3d 517, 524 (9th Cir. 1996) (holding that a pre-trial detainee who

is placed in disciplinary segregation as punishment has a right to a due process hearing).  Further,

disciplinary proceedings which implicate a protected liberty interest demand due process. See Wolff



v. McDonnell, 418 U.S. 539 (1974).[3]  To prevail on a procedural due process claim, an inmate must

first demonstrate that he was deprived of life, liberty, or property by governmental action.  Beverati

v. Smith, 120 F.3d 500, 502 (4th Cir. 1997).  When the punishment does not cause the original

sentence to be enhanced, protected interests will be generally limited to freedom from restraint that

imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison

life.  Sandin v. Conner, 515 U.S. 472 (1995).  However, the United States Supreme Court has held

that disciplinary segregation does not present the type of atypical, significant deprivation in which

a state might create a liberty interest.  See Id. at 486; see also Beverati, 120 F.3d at 502 (4th Cir.

1997) (finding that inmates do not possess a liberty interest in avoiding administrative segregation).

In support of their motion, the defendants have provided affidavit testimony from Defendant

Blanding.  (ECF No. 36-5.)  Defendant Blanding avers that Thomas was transferred "from Alpha to

Bravo Pod" on May 23, 2013, for violating pod rules.  (Id. at 1-2.)  Defendant Blanding further avers

that Thomas used profane language towards an officer while being escorted to the disciplinary unit.

(Id. at 2; see also ECF No. 36-6 at 2.)  Defendant Blanding testifies that she "attempted to serve

[Thomas] a disciplinary hearing notice on June 12, 2013 in regards to his violation of pod rules [on

May 23, 2013] . . . however, [Thomas] refused to sign or accept that disciplinary hearing notice."

(ECF No. 36-5 at 2.)  Defendants provided a copy of the disciplinary hearing notice, which reflects

the words "refused" and "I waive my right to 24 hr. notice and agree to have my hearing today"

written across the bottom of the form.  (ECF No. 36-8 at 2.)  Defendant Blanding avers that a refusal

---

[3]  Under Wolff, the inmate is entitled to the following:  (1) written notice of the charges at least twenty-four hours in advance of the hearing; (2) written findings as to the evidence relied upon and reasons for the disciplinary action; and (3) the right to call witnesses and present evidence in his defense, provided there is no undue hazard to institutional safety or correctional goals.  Wolff, 418 U.S. at 563-67.



to sign a disciplinary hearing notice "is treated as an admission of guilt by policy of the SLRDC" and that Thomas did not appeal the disciplinary conviction. (ECF No. 36-5 at 2.)

Thomas's Complaint alleges that he "had words" with the correctional officer escorting him to the disciplinary unit (ECF No. 1 at 3), and his response to the defendant's motion asserts that he was placed in the disciplinary unit for purportedly leaving his cube while on cube restriction. (ECF No. 40 at 2.) Thomas's response alleges that he did not waive his right to a disciplinary hearing, but admits that he received a disciplinary hearing notice. (Id. at 1-2.) Thomas's response asserts that such notice was received on June 12, 2013, nineteen days after his placement in the disciplinary unit. (Id. at 2.) Thus, the evidence shows that Thomas was placed in the disciplinary unit for a purported violation of SLRDC rules and that the defendants provided Thomas a disciplinary hearing notice within twenty-four hours of the hearing. See Geter v. Powers, C/A No. 0:06-3015-CMC-BM, 2007 WL 3046697, at *5 (D.S.C. Oct. 15, 2007) (adopting and incorporating report and recommendation for summary judgment where prisoner presented no evidence to show a denial of appropriate disciplinary proceedings and defendants submitted evidence to show that due process requirements were met). The court further observes that Thomas fails to allege or present evidence to show that his placement in the disciplinary unit imposed any significant or atypical hardship. Therefore, the Complaint fails to demonstrate a violation of Thomas's right to due process and the defendants' motion should be granted as to this claim.

### ii.     Custody Classification

A prisoner has no constitutional right to any particular custody or security classification, see Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976) (noting that prisoners have no constitutionally protected interest in prison classifications or rehabilitative programs), and no constitutional right to



be housed in a particular institution, at a particular custody level, or in a particular portion or unit

of a correctional institution.  See Olim v. Wakinekona, 461 U.S. 238 (1983); see also Slezak v.

Evatt, 21 F.3d 590, 594 (4th Cir. 1994) ("The federal constitution itself vests no liberty interest in

inmates in retaining or receiving any particular security or custody status '[a]s long as the

[challenged] conditions or degree of confinement . . . is within the sentence imposed . . . and is not

otherwise violative of the Constitution.' ") (alterations in original) (quoting Hewitt v. Helms, 459

U.S. 460, 468 (1983)).  Further, federal courts are required to accord great consideration to a

correctional system's need to maintain order, discipline, and control.  See Sandin, 515 U.S. at 483-84

("federal courts ought to afford appropriate deference and flexibility to state officials trying to

manage a volatile environment"); see also Wolff, 418 U.S. at 558-62.  While  a detainee may not be

punished prior to the adjudication of guilt, he may be subjected to "the restrictions and conditions

of the detention facility so long as those conditions and restrictions do not amount to punishment."

 Bell, 441 U.S. at 535-36.  To establish impermissible punishment, "a detainee must show either 1)

an 'expressed intent' to punish or 2) a lack of a reasonable relationship 'to a legitimate nonpunitive

governmental objective, from which a punitive intent may be inferred.' "  Hill v. Nicodemus, 979

F.2d 987, 991 (4th Cir. 1992) (citations omitted).

     In support of their motion, the defendants provide affidavit testimony from Defendant

McMillian.  (ECF No. 36-2.)  Defendant McMillian avers that she initially classified Thomas as a

"medium custody" detainee assigned to "Echo Pod" upon his entry into the SLRDC on May 13,

2013.  (Id. at 1.)  However, Defendant McMillian testifies that she performed an "in-depth review"

of Thomas's criminal records on May 15, 2013, resulting in his re-classification as a "maximum

security" detainee assigned to "Alpha Pod" based on the SLRDC's policies and procedures.[4]  (Id. at 2.)  Defendant McMillian avers that the "change in housing units did not result in a change of [Thomas's] privileges."  (Id.)  Defendant McMillian further avers that Thomas's re-classification had no connection to his placement into the "Bravo Pod" on May 23, 2013.  (Id. at 3.)

Thomas's filings do not refute Defendant McMillian's affidavit testimony.   In fact, Thomas's response to the defendants' motion does not assert any constitutionally protected right to a particular custody classification and admits that he was "sent to lock-up Bravo-Pod . . . for being on cube restri[c]tion and coming out of my cube."  (ECF No. 40 at 2.)  As the unrefuted evidence shows that Thomas's re-classification did not constitute impermissible punishment or implicate a protected liberty interest, he has failed to state a claim of constitutional magnitude regarding his security or custody classification.  Therefore, the defendants' motion should be granted as to any due process claims associated with Thomas's custody classification.

**2.    Equal Protection Claims**

"To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination."  Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001).  As asserted by the defendants in their motion, Thomas's Complaint fails to allege that he was treated differently from others with whom he was similarly situated.  (ECF No. 36-1 at

---

[4]  To the extent Thomas alleges that the defendants violated his constitutional rights by failing to follow SLRDC policy (ECF No. 1 at 5), such an argument is unavailing.  See Keeler v. Pea, 782 F. Supp. 42, 44 (D.S.C.1992) (indicating that violations of prison policies which fail to rise to the level of violating a constitutional right are not actionable under § 1983); see also Riccio v.Cnty. of Fairfax, Va., 907 F.2d 1459, 1469 (4th Cir. 1990) ("If state law grants more procedural rights than the Constitution would otherwise require, a state's failure to abide by that law is not a federal due process issue.").



14.)  In his response, Thomas appears to allege that an SLRDC officer allowed some detainees to leave their cubes while on restriction, but required Thomas to remain in his cube.  (ECF No. 40 at 2.)  However, Thomas fails to provide evidence that the defendants subjected him to intentional or purposeful discrimination in violation of the Fourteenth Amendment.  Therefore, the court finds such an allegation insufficient to plausibly allege an equal protection claim and the defendants' motion should be granted.

## RECOMMENDATION

Accordingly, the court recommends that the defendants' motion (ECF No. 36) be granted.

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

June 27, 2014
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).